## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| REGINA OESTERLE and BENJAMIN OESTERLE, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:23-cv-11848-JEK |
| v. | ) ) | |
| BOSTON SCIENTIFIC CORPORATION, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

**KOBICK, J.**

In this products liability action, plaintiffs Regina and Benjamin Oesterle seek redress for injuries arising from the implantation and subsequent partial removal of the "Obtryx" sling, a medical device manufactured by defendant Boston Scientific Corporation. Pending before the Court is Boston Scientific's motion to dismiss the plaintiffs' claim for negligent misrepresentation. Although the negligent misrepresentation claim is abrogated by the Ohio Products Liability Act to the extent it seeks compensatory damages, it is not abrogated insofar as it seeks only economic loss damages and is pleaded in the alternative to the plaintiffs' failure to warn claim. Because the negligent misrepresentation claim is plausibly alleged, the motion to dismiss will be denied, but the claim may proceed only as pleaded in the alternative and limited to economic damages.

## BACKGROUND

The following facts, drawn from the amended complaint, are treated as true for the purposes of the motion to dismiss. *See Rosenberg v. City of Everett*, 328 F.3d 12, 15 (1st Cir. 2003).

1

The plaintiffs, Regina and Benjamin Oesterle, are residents of Ohio. ECF 26, ¶ 1. Boston Scientific, a company incorporated in Delaware and headquartered in Massachusetts, patented, manufactured, packaged, labeled, marketed, sold, and distributed pelvic mesh products, including the Obtryx Transobturator Mid-Urethral Sling System at issue in this case. *Id.* ¶¶ 2-3, 7. Pelvic mesh products are used to treat pelvic organ prolapse and stress urinary incontinence. *Id.* ¶ 11. Pelvic organ prolapse occurs when a pelvic organ drops from its normal position and pushes against the walls of the vagina. *Id.* ¶ 12. Stress urinary incontinence is characterized by a leakage of urine during moments of physical stress. *Id.* ¶ 13. Most pelvic mesh products contain surgical mesh that is permanently implanted in the patient to treat these conditions. *Id.* ¶ 14.

The Obtryx contains polypropylene mesh, which causes an adverse tissue reaction and chronic inflammatory response in a large subset of patients who have the device surgically implanted. *Id.* ¶¶ 15, 38. The product can trigger a "host body defense" in these patients, leading to nerve entrapment caused by shrinkage or contraction of the mesh, chronic pain and infections, tissue scarring, inflammation, dyspareunia, urinary dysfunction, and anatomic deformation, among other possible symptoms. *Id.* ¶¶ 15-16, 38. Due to the hardening and integration of the mesh into the pelvic tissue, surgeons sometimes cannot effectively treat these conditions. *Id.* ¶ 38.

The plaintiffs allege that Boston Scientific described the Obtryx as "trusted" and the "preferred surgical approach" in marketing materials, despite knowing the dangers of the product. *Id.* ¶ 35. They also allege that Boston Scientific failed to conduct the necessary testing and research before making these representations, *id.* ¶¶ 42, 110, and that Ms. Oesterle's physicians, and the plaintiffs themselves, reasonably relied on the representations, *id.* ¶¶ 107, 124.

On July 21, 2020, Ms. Oesterle underwent surgery at Dublin Methodist Hospital in Westerville, Ohio, to have the Obtryx implanted. *Id.* ¶ 68. On September 30, 2022, Ms. Oesterle

had the Obtryx partially removed. *Id.* ¶ 69. As a result of injuries caused by the Obtryx, Ms. Oesterle has experienced disfigurement, physical pain, and emotional pain and anguish. *Id.* ¶¶ 40, 47, 70-71. She anticipates that she will need future surgeries to remove the remaining mesh. *Id.* ¶¶ 72-73.

The Oesterles initiated this lawsuit in August 2023 and filed an amended complaint in November 2023. The amended complaint asserted eight claims: defective manufacturing under the Ohio Products Liability Act ("OPLA"), Ohio Rev. Code Ann. § 2307.74 (Count 1); failure to warn under the OPLA, Ohio Rev. Code Ann. § 2307.76 (Count 2); defective design under the OPLA, Ohio Rev. Code Ann. § 2307.75 (Count 3); nonconformance under the OPLA, Ohio Rev. Code Ann. § 2307.77 (Count 4); negligent misrepresentation (Count 5); breach of express warranty under Ohio Rev. Code Ann. § 1302.26 (Count 6); breach of implied warranty under Ohio Rev. Code Ann. § 1302.27 (Count 7); and loss of consortium by Mr. Oesterle (Count 8). ECF 26. Boston Scientific moved to dismiss the complaint in its entirety. ECF 32. Subsequently, the plaintiffs stipulated to dismissal of Counts 1, 4, 6, and 7, ECF 48, and Boston Scientific withdrew without prejudice its motion to dismiss as to Counts 2 and 3, ECF 52, and agreed at the motion hearing that it was not moving to dismiss Count 8. Thus, Boston Scientific presses its motion to dismiss only with respect to Count 5, the negligent misrepresentation claim.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief."

3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

## DISCUSSION

### I.   <u>Choice of Law.</u>

Where, as here, subject matter jurisdiction is premised on diversity of citizenship, "state law supplies the substantive rules of decision." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023). If the parties agree on the state law that applies, the court "is free to 'forego an independent [choice-of-law] analysis and accept the parties' agreement.'" *Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 317 F.3d 16, 20 (1st Cir. 2003) (quoting *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 375 (1st Cir. 1991)). The parties here agree that Ohio law governs the dispute because Ms. Oesterle's surgeries, injuries, and treatment all took place in Ohio, and the plaintiffs live in Ohio. ECF 32, at 4; ECF 40, at 2. Under the circumstances, the parties' agreement is reasonable, and the Court exercises its discretion to accept their choice of law without conducting an independent choice-of-law analysis.

### II.   <u>The Plaintiffs May Pursue Only Economic Loss Damages Through Their Negligent Misrepresentation Claim.</u>

The plaintiffs' common law negligent misrepresentation claim alleges that Boston Scientific breached its duty to accurately and truthfully represent to the medical community, Ms. Oesterle's doctors, and the plaintiffs themselves, the known risks of the Obtryx, when used to treat stress urinary incontinence and pelvic organ prolapse. ECF 26, ¶¶ 109-114. The parties dispute the extent to which the Ohio Products Liability Act, Ohio Rev. Code Ann. §§ 2307.71 to 2307.80,

abrogates the negligent misrepresentation claim and whether, in any event, the plaintiffs have stated a claim for negligent misrepresentation.

A.    The Negligent Misrepresentation Claim Is Abrogated in Part by the Ohio Product Liability Act.

Under Ohio law, common law causes of action may be abrogated only by an express statutory command. *See Combs v. Ohio Dep't of Nat. Res., Div. of Parks & Recreation*, 55 N.E.3d 1073, 1078 (Ohio 2016). The OPLA contains one such command, stating that "[s]ections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability claims or causes of action." Ohio Rev. Code Ann. § 2307.71(B). "Product liability claims" include those that seek compensatory damages from a manufacturer for physical or emotional injuries "that allegedly arose from . . . [a]ny warning or instruction, or lack of warning or instruction, associated with" a product. *Id.* § 2307.71(A)(13)(b). The OPLA's abrogation provision "extinguishes any common-law claim that, as pled, actually meets the statutory definition of a product liability claim." *Volovetz v. Tremco Barrier Sols., Inc.*, 74 N.E.3d 743, 753 (Ohio Ct. App. 2016).

Certain common law remedies are, however, carved out from OPLA abrogation. One exception, relevant here, provides that "[a]ny recovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, other than a product liability claim, is not subject to sections 2307.71 to 2307.79 of the Revised Code, but may occur under the common law of this state or other applicable sections of the Revised Code." Ohio Rev. Code Ann. § 2307.72(C). "Economic loss" is defined as "direct, incidental, or consequential pecuniary loss, including, but not limited to, damage to the product in question, and nonphysical damage to property other than that product." *Id.* § 2307.71(A)(2). Thus, a "cause of action seeking only economic loss is not a 'product liability claim' under the OPLA." *Dates v. Ethicon, Inc.*, No. 2:20-cv-2187, 2020 WL

3265537, at \*2 (S.D. Ohio June 17, 2020) (citing *LaPuma v. Collinwood Concrete*, 661 N.E.2d 714, 716 (Ohio 1996)).

To determine whether a common law cause of action is a "product liability claim" abrogated by the OPLA, courts look to the "essential nature of the substantive allegations of the plaintiff's claim, not the artificial label attached to the claim." *Volovetz*, 74 N.E.3d at 753; *see also Perry v. Ethicon, Inc.*, No. 2:20-cv-6592, 2022 WL 912214, at \*3 (S.D. Ohio Mar. 29, 2022) (common law claims are abrogated by the OPLA when "'[t]he actionable conduct that forms the basis' of that claim is 'the same conduct that the OPLA defines as giving rise to a 'product liability claim'" (quoting *Mitchell v. Procter & Gamble*, No. 2:09-cv-426, 2010 WL 728222, at \*4 (S.D. Ohio Mar. 1, 2010))). The parties here agree that the essential nature of the Oesterles' negligent misrepresentation claim is actionable under a failure to warn theory, which the plaintiffs have separately alleged in Count 2 under the OPLA, Ohio Rev. Code Ann. § 2307.76. Their failure to warn claim, like their negligent misrepresentation claim, alleges that Boston Scientific "failed to properly and adequately warn and instruct the Plaintiff and/or her health care providers as to the risks and benefits" of the Obtryx. ECF 26, ¶ 84; *see also id.* ¶¶ 82-83, 85-94, 109-114. Thus, to the extent the plaintiffs' negligent misrepresentation claim seeks compensatory damages, it is abrogated by the OPLA.

The negligent misrepresentation claim may, however, be maintained if it is limited to economic loss damages and pleaded in the alternative to the OPLA failure to warn claim—that is, it can go forward only if the OPLA claim fails. *See Dates*, 2020 WL 3265537, at \*2 ("[A] plaintiff in a product liability action is entitled to bring an OPLA claim while simultaneously bringing a common law claim for economic loss damages."). Ohio federal courts have explained why a plaintiff can bring OPLA claims and common law claims for economic loss in the same action.

6

Economic loss damages may be recovered under an OPLA cause of action, but only if a plaintiff first establishes entitlement to compensatory damages. *See* Ohio Rev. Code Ann. § 2307.79(A). A plaintiff "injured by a defective product" may, however, "have a relatively certain claim for economic loss, but a less certain claim for compensatory damages." *Perry*, 2022 WL 912214, at *4 n.4 (internal quotation marks omitted). Under Ohio law, a plaintiff is not forced to "choose either to (1) forego any chance of obtaining compensatory relief (i.e., by solely pursuing a common law economic loss claim) or (2) deliberately reduce the certainty of their economic loss recovery by solely bringing an OPLA claim." *Id.* (internal quotation marks omitted). Put simply, Ohio law "does not support circumscribing a plaintiff's right to the remedy of economic loss damages." *Huffman v. Electrolux N. Am., Inc.*, 961 F. Supp. 2d 875, 881 (N.D. Ohio 2013).[1]

Boston Scientific's motion to dismiss initially contended that because the plaintiffs sought both economic and non-economic losses, their negligent misrepresentation claim must be dismissed. But at the motion hearing, Boston Scientific acknowledged that the Oesterles can seek economic loss damages through their negligent misrepresentation claim, to the extent it is pleaded in the alternative to the failure to warn claim. Nevertheless, Boston Scientific maintains that the amended complaint does not adequately plead economic loss as an alternative theory of liability.

---

[1] Some federal courts in Ohio have suggested that claims for economic damages may not be pleaded in the alternative. *See, e.g.*, *Grubbs v. Smith & Nephew, Inc.*, No. 1:19-cv-248, 2020 WL 5305542, at *2 (S.D. Ohio Sept. 4, 2020). But the Ohio Supreme Court has held that common law actions are abrogated only by an express statutory command, and that claims seeking solely economic damages are not under the "purview" of the OPLA at all. *Combs*, 55 N.E.3d at 1078; *La Puma*, 661 N.E.2d at 66-67. In light of those holdings and the absence of statutory language in the OPLA foreclosing alternatively pled common law claims for economic loss, this Court agrees with *Dates*, *Perry*, and *Huffman* that the Ohio Supreme Court would conclude that common claims limited to economic damages claims and pleaded in the alternative are not abrogated by the OPLA. *See Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1151 (1st Cir. 1996) (applying state law requires "interpreting and applying the rules of substantive law enunciated by the state's highest judicial authority, or, on questions to which that tribunal has not responded, making an informed prophecy of what the court would do in the same situation").

The Court disagrees. The amended complaint alleges that Ms. Oesterle "has sustained and will continue to sustain severe and debilitating injuries, serious bodily injury, mental and physical pain and suffering and has incurred economic loss, which losses may continue far into the future," ECF 26, ¶ 73, and that allegation is incorporated by reference into the allegations concerning the negligent misrepresentation claim, *id.* ¶ 109. Similarly, the plaintiffs allege that they have suffered "economic damages" as a result of Boston Scientific's negligence, *id.* ¶ 114, and seek "[c]ompensation for both economic and non-economic losses" in their Prayer for Relief, *id.* at 38. Viewed in the light most favorable to the plaintiffs, *see Butler v. Balolia*, 736 F.3d 609, 617 (1st Cir. 2003), the amended complaint adequately alleges economic loss stemming from Boston Scientific's negligent misrepresentations as an alternative theory of liability.[2]

Thus, to the extent it is pleaded in the alternative to the failure to warn claim and limited to economic loss damages, the negligent misrepresentation claim is not abrogated by the OPLA.

### B.    The Complaint Alleges a Plausible Claim of Negligent Misrepresentation.

Boston Scientific next argues that, even if the negligent misrepresentation claim is not abrogated by the OPLA, the plaintiffs have failed to allege the essential elements of the claim. The Supreme Court of Ohio describes the elements of negligent misrepresentation as follows: when, "in the course of his business, [a defendant] supplies false information for the guidance of others in their business transactions, [the defendant is] subject to liability for pecuniary loss caused to [the plaintiff] by their justifiable reliance upon the information, if [the defendant] fails to exercise

---

[2] In *Perry*, which also concerned injuries allegedly caused by pelvic mesh products, the court explained the measure of economic loss damages as follows: The plaintiff "paid to have a product that (1) was intended to 'reinforce' human tissue and (2) began to destruct upon contact with human tissue implanted in her body. It is, in that light, certainly plausible that the value she paid for the device was more than the value of the product she received. That is an economic loss." 2022 WL 912214, at *5. At the motion hearing in this case, the parties agreed with *Perry*'s articulation of economic loss.

reasonable care or competence in obtaining or communicating the information." *Gutter v. Dow Jones, Inc.*, 490 N.E.2d 898, 900 (Ohio 1986). Boston Scientific contends that the plaintiffs have failed to allege reliance on the company's information and that any such reliance was justifiable.[3]

The plaintiffs' amended complaint clears the hurdle for dismissal under Rule 12(b)(6). First, it alleges that Boston Scientific:

> omitted and downplayed the risks, dangers, defects, and disadvantages of the Products, and advertised, promoted, marketed, sold and distributed the Products as safe medical devices when Defendant knew or should have known that the Products were not safe for their intended purposes, and that the Products would cause, and did cause, serious medical problems, and in some patients, including the Plaintiff, catastrophic injuries. Further, while some of the problems associated with the Products were made known to physicians, the magnitude and frequency of these problems were not disclosed and were hidden from physicians.

ECF 26, ¶ 35. It also alleges that the "Plaintiff and her physicians reasonably relied on the representations made by [Boston Scientific] relating to the [Obtryx's] conformance with safety standards," *id.* ¶ 107, and that "[m]embers of the medical community, including physicians and other healthcare professionals, as well as Plaintiff and the Public relied upon the representations and warranties of [Boston Scientific] in connection with the use recommendation, description, and/or dispensing of their pelvic mesh products," *id.* ¶ 124.[4] These factual allegations are sufficient to plausibly allege reliance on Boston Scientific's representations and that such reliance was

---

[3] At the motion hearing, Boston Scientific appeared to represent that the negligent misrepresentation claim was viable, and that the company was principally concerned with limiting the claim to economic loss. Nevertheless, the Court addresses the argument made in Boston Scientific's brief, proceeding on the assumption that the argument was not waived.

[4] The factual allegations in paragraphs 107 and 124 are nested under other counts in the amended complaint. But they are factual allegations, not legal conclusions, and they are accepted as true for purposes of the motion to dismiss. *See Iqbal*, 556 U.S. at 678-79. As the First Circuit has explained, "[t]he critical question is whether the claim, viewed holistically, is made plausible by 'the cumulative effect of the factual allegations' contained in the complaint." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 82 (1st Cir. 2013) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 14 (1st Cir. 2011)).

justifiable. *See Rheinfrank v. Abbot Lab'ys*, No. 1:13-cv-144, 2013 WL 4067826, at \*4 (S.D. Ohio Aug. 12, 2013) (finding similar negligent misrepresentation allegations sufficient to survive a motion to dismiss).

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss Count 5 is DENIED. The plaintiffs' claim for negligent misrepresentation may proceed to the extent it seeks economic loss damages only and is pleaded in the alternative to Count 2.

SO ORDERED.

/s/ Julia E. Kobick
United States District Judge

Dated: March 12, 2024